The pledge being made by Josiah of the horse, as his own property, in the presence of Lemuel, estops the latter from setting up his title, to impugn that transaction. It is true that as to all other transactions his silence is only evidence of the want of title. The terms of the pledging (which was by parol) are stated in the case to be that if Dawson had to pay the money, for which he was bound as Josiah's surety, then Dawson was authorized to sell the horse, and after reimbursing himself, to pay the balance to Josiah. By a literal construction of these words the actual payment of money as Josiah's surety by Dawson must precede the sale; and the Judge, before whom the *Page 114 
cause was tried, understood it in that manner. I understand the agreement more liberally, viz., that the words "to have the money to pay," in a parol contract, between the principal and surety, may well (182) mean "to be about to suffer." For the obligation of the principal to his surety is not that he will repay any money which the surety shall pay for him, but that he will save the surety from harm, and I understand that the property was delivered to Dawson that the obligation of the principal to his surety might be fulfilled, or rather that Dawson might have the means of their fulfilment in his own hands. A sale was the means; the time, whenever the obligation arose. If payment by the surety was to precede a sale the contract did but half answer the end designed. Instead, therefore, of instructing the jury to adhere to the mere words of the witness, they should have been told that if Dawson had actually suffered, or was about to suffer, and sold for the purpose of securing himself, the sale was valid, notwithstanding the words used; for that was their spirit. To test the propriety of the sale, suppose that the horse had been Josiah's (and in this transaction it is his, to all intents and purposes), and he had brought an action either against Dawson for breach of duty for selling before he had actually paid the debt, or against Benton, his vendee, and it appeared that there was an execution in the hands of an officer, or even a judgment obtained against Dawson for one of those debts, and that he had sold the horse to raise money to prevent his own property from being sold, could a recovery be effected because in this verbal agreement as to the manner he was to act, to save himself out of the indemnity, payment of the debt was to precede the sale? It is true that in a mere naked power, where all the rights grow out of the power and its execution, such strictness should and would be observed. But here the pawnee had a special property for his indemnity; he had an interest. It is also true that such terms might have been imposed; but it should appear that they formed part of the agreement, and that without them the agreement would not have been made.
Here I do not think that they entered into the design of the parties, but that the words "should pay" and "should reimburse" were (183) used more to ascertain the sum to be paid and that to be reimbursed than a previous condition to the sale.
PER CURIAM. New Trial.
Cited: Mason v. Williams, 53 N.C. 480.
Overruled: Governor v. Freeman, 15 N.C. 474; West v. Tilghman,31 N.C. 165.
Distinguished: Lamb v. Goodwin, 32 N.C. 322; Smith v. Chetwood,44 N.C. 448. *Page 115